Dear Secretary Ford
¶ 0 The Attorney General has received your letter asking for an official opinion addressing in effect the following questions:
1. Is it a per se violation of Article XI, of the OklahomaConstitution or of the Oklahoma Enabling Act, Ch. 3335, 34 U.S.Stat. 267 (1906), for the Legislature to enact statutesestablishing the conditions under which the Commissioners of theLand Office are to sell easements on School Land Trust property?
 2. Does 64 O.S. 1.4 (1993) violate 10 of the OklahomaEnabling Act, 34 U.S. Stat. 267, 274 (1906), which requires thatthe School Land Trust receive full value for intereststransferred?
 I. GENERAL AUTHORITY OF THE LEGISLATURE OVER SCHOOL LAND TRUST PROPERTY
¶ 1 In your first question, you ask whether the Legislature's establishment of procedures under which the Commissioners of the Land Office are to grant easements to various public projects and entities, constitutes a per se violation of the mandate that the Commissioners of the Land Office have sole charge of the sale, rental, disposal, and management of the lands, funds, and proceeds of the School Land Trust, which was created when Oklahoma became a state.
¶ 2 As you know, on June 16, 1906, Congress passed the Oklahoma Enabling Act, 34 U.S. Stat., Ch. 234, 267 (1906), which provided that the State of Oklahoma, upon its admission to the Union as a State, was to be granted various funds and lands to be held in trust by the State for the use and benefit of common schools and other educational institutions. Oklahoma Enabling Act at Section 7, 34 Stat. 267, 272, and Section 8, 34 Stat. 267, 273 (1906). The framers of the Oklahoma Constitution accepted these grants from Congress with the adoption of Article XI, Section 1, which provides:
 The State hereby accepts all grants of land and donations of money made by the United States under the provisions of the Enabling Act, and any other Acts of Congress, for the uses and purposes and upon the conditions, and under the limitations for which the same are granted or donated; and the faith of the State is hereby pledged to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated.
¶ 3 In Oklahoma Education Association, Inc. v. Nigh,642 P.2d 230, 235 (Okla. 1982), the Oklahoma Supreme Court held that the State's acceptance of these grants from Congress constituted an irrevocable compact between the United States and Oklahoma which may not be modified, altered, or impaired by the Legislature or the people of the State. The primary purpose of the School Land Trust is to produce income for the benefit of common schools and other beneficiaries in Oklahoma. Nigh, 642 P.2d at 237. As you also know, the Commissioners of the Land Office, under the provisions of Title 64 and the Oklahoma Constitution, are the administrators of the School Land Trust.
¶ 4 Under Section 9 of the Enabling Act, 34 Stat. 267, 274, the land granted for the support of the common schools, if sold, "may be appraised and sold at public sale in one hundred and sixty acre tracts or less, under such rules and regulations as theLegislature of the said State may prescribe." (Emphasis added.) The Oklahoma Supreme Court has made it clear, however, that the Legislature, in prescribing rules and regulations for the administration of the trust, may not alter, modify, or diminish the State's duty as trustee of the property. Rather, the State must administer the trust in a manner most beneficial to the trust and which obtains the maximum benefit and return from the use of said trust property. Nigh, 642 P.2d at 236.
¶ 5 In Nigh, the Oklahoma Supreme Court struck down as violative of the conditions of the sacred School Land Trust statutes which imposed unreasonable, below-market rates on the loan of trust funds, established below-market rents on trust land leases, and a statute which established a bidding preference for lessees of school land. Striking the statutes down, the Supreme Court stated:
 [W]e hold that the challenged statutes require management of trust funds and property in a manner inconsistent with the terms of the original grant, requiring Respondents to violate their duties as managerial trustees of the School Land Trust, and therefore violative of the provisions of Article XI, Section 1, Article XI, Section 2, and Article XI, Section 5 of the Oklahoma Constitution and the Oklahoma Enabling Act. . . . While the Legislature does have the power to, and may, regulate the activities of the Commissioners, it can neither abridge nor impair their freedom to function in utmost good faith in the day-to-day discharge of their public obligation as managers of the trust estate and while acting on behalf of the State as Trustee.
Nigh, 642 P.2d at 238 (emphasis added).
¶ 6 In striking down the lease, loan, and preference statutes, the Oklahoma Supreme Court agreed with Petitioner's contention that the statutes had the effect of subsidizing the farmers and ranchers who were the recipients of the loans, leases and preferences. Noting that use of trust assets to subsidize other worthwhile causes was contrary to the State's obligation as Trustee, the Court stated:
 Just as a State may not use school land trust fund assets to subsidize its highway construction program, a State may not use school land trust assets to subsidize farming and ranching. The use of trust fund assets for the purpose of subsidizing farmers and ranchers is contrary to the provisions of the Oklahoma Constitution, and to the provisions of the Oklahoma Enabling Act."
Nigh, 642 P.2d at 236.
¶ 7 As we have seen, the Enabling Act makes it clear that those managing the sacred School Land Trust are to do so under rules and regulations prescribed by the Legislature. Enabling Act, 9,34 Stat. 267, 274. Accordingly, we must answer your first question in the negative. The Legislature, by enacting statuteswhich merely establish rules and regulations for the managementof the Trust, does not violate per se either the Enabling Act orArticle XI of the Oklahoma Constitution. Legislative rules and regulations, however, as we have seen from the Supreme Court's rulings in Oklahoma Education Ass'n v. Nigh, may not run afoul of the State's trust obligations.
 II.
¶ 8 Your second question asks us to determine whether the Legislature, in establishing procedures for granting utility type easements, has violated the State's trust obligations. More specifically, you ask whether the provisions of 64 O.S. 1.4
(1993) violate Section 10 of the Oklahoma Enabling Act, which requires that the School Land Trust receive full value for property interest transferred. We begin our analysis of your question with a review of the statute, 64 O.S. 1.4 (1993):
 A. The Commissioners of the Land Office may grant easements to entities with power of eminent domain pursuant to the policies of Section 13 of Title 27 of the Oklahoma Statutes. (27 O.S. 13)
B. The Commission may grant easements to:
 1. nonprofit rural water districts organized pursuant to Section 863 of Title 18 of the Oklahoma Statutes; (18 O.S. 863)
 2. rural water districts organized pursuant to the Rural Water, Sewer, Gas and Solid Waste Management Districts Act, or
 3. rural electric cooperatives organized pursuant to Section 437 of Title 18 of the Oklahoma Statutes, which may be for the consideration of laying a water or power line upon the property which will increase the value of such property. (18 O.S. 437)
 C. Prior to the granting of such easement, an appraisal shall be conducted to determine the fair market value of the easement. The appraisal shall be the responsibility of the district or cooperative requesting the easement. The appraisal shall be conducted by a person who is a licensed or certified real estate appraiser, pursuant to the Oklahoma Certified Real Estate Appraisers Act. The appraisal shall be consistent with the value received for any public or private easements of like type at, adjacent to, or near the location of the easement requested. Such appraised value shall be the basis for the de termination of fair market value of the easement.
For purposes of this section, the fair market value for any easement granted pursuant to subsection B of this section shall mean One Dollar ($1.00) over the appraised value of the easement. Except for the amount received for the granting of an easement pursuant to this subsection, no additional fees or other charge shall be assessed by Commissioners of the Land Office for the granting of such easement.
 D. The granting of easements pursuant to this section shall be timely and shall not exceed sixty (60) days from date of application.
 E. Easements shall run concurrently with the life of the facilities installed.
(Emphasis added.)
¶ 9 At first blush, the procedures set forth in this new statute would seem consistent with the trust obligations of the School Land Commissioners to obtain the maximum benefit from the use or sale of trust property, for the beneficiaries of the trust. A closer reading, however, reveals that blindly following the procedure in all instances is insufficient to protect the Trust's interest.
¶ 10 The provisions of 64 O.S. 1.4 (1993) offer far less protection than that required in the Enabling Act at Section 10,34 Stat. 267, 274. Section 10 of the Enabling Act requires, among other things, that before any land granted to the State can be sold, its value and the value of all improvements thereon be appraised "by three disinterested appraisers," and that they "shall make a true appraisement of said lands at the actual cash value thereof, exclusive of improvements, and shall separately appraise all permanent improvements thereon at their fair and reasonable value."
¶ 11 Because the State, in accepting the sacred School Land Trust, accepted the trust under the conditions specified in the Enabling Act, and because those conditions cannot be modified, we conclude that when selling easements on granted trust land, the State cannot rely solely on a single appraiser who is the responsibility of the party requesting the easement, as the provisions of 64 O.S. 1.4 (1993) dictate. Rather, the State must comply with the provisions of Section 10 of the Enabling Act and insure that three disinterested appraisals are made.
¶ 12 We further conclude that 64 O.S. 1.4 (1993), is infirm to the extent that it limits the value the State is to receive for the conveyance of an easement to the value received "for any public or private easement, of like type at, adjacent to, or near the location of the easement requested," because the statute does not permit the State to receive actual cash value, as required by Section 10 of the Enabling Act.
¶ 13 Similarly, the provisions of 64 O.S. 1.4 (1993) do not permit the State, as required, to maintain the trust and its assets "in a manner most beneficial to the trust estate." See,Nigh, 642 P.2d at 236. In limiting the required appraisal to a single appraiser, who is the responsibility of the entity requesting an easement, and in defining the value to be received for the easement as only that received "for any public or private easements of like type at, adjacent to, or near the location of the easement requested," 64 O.S. 1.4 (1993) does not permit the State to be compensated for the damage, if any, that the granting of the easement does to the remailing trust property.
¶ 14 The damage to remaining land is considered part of the "just compensation" which any private party is due when property is taken or damaged for public use. Title 27 of Oklahoma's 1991 statutes, at 16, defines "just compensation," in instances where private property is taken or damaged for public use as "the value of the property taken and in addition, any injury to any part ofthe property not taken." (Emphasis added.) In such instances, any special and direct benefits to the part of the property not taken may be offset only against any injury to the property not taken.
¶ 15 Under Title 27, if only a part of the private citizen's tract is taken, just compensation is ascertained by determining the difference between the fair market value of the whole tract immediately before the taking and the fair market value of that portion remaining immediately after the taking. Indeed, before any public corporation, municipality or other entity or person authorized to exercise the right of eminent domain under existing law can exercise that right, there must be an appraisal of the property made by three disinterested appraisers, whose appraisal shall include "the value of the ground so taken, and the damages to the remaining parts of such subdivision by the taking thereof," 27 O.S. 2 (1991). Not only do the provisions of 64O.S. 1.4 (1993) avoid the requirement that the property appraisals must be made by three disinterested appraisers, as required by Section 10 of the Enabling Act, the statute also limits the compensation received by the trust, by omitting any compensation for damage done to the remaining property — damage which the State or any other property owner in other situations would be entitled to. Because 64 O.S. 1.4 (1993) imposes artificial restrictions on the compensation due on the sale of an easement on School Land Trust property and is contrary to the appraisal requirement of 10 of the Oklahoma Enabling Act, we conclude that 1.4 is inconsistent with the State's duty as trustee to manage School Land Trust land "in a manner most beneficial to the trust estate" as required by the Enabling Act.See, Nigh, 642 P.2d at 236. Accordingly, we conclude that the provisions of 64 O.S. 1.4 (1992) are infirm.
¶ 16 It is, therefore, the official opinion of the AttorneyGeneral, that:
 1. It is not a per se violation of the provisions of ArticleXI of the Oklahoma Constitution nor the provisions of theOklahoma Enabling Act, Ch. 234, 34 U.S. Stat. 267 (1906), for theLegislature to enact statutes prescribing conditions under whichthe Commissioners of the Land Office may convey easements onSchool Land Trust property, because under the provisions ofSection 9 of the Enabling Act, 34 Stat. 267, 274, lands grantedto the State may be appraised and sold "under such rules andregulations as the Legislature of said State may prescribe."
 2. The procedures established in 64 O.S. 1.4 (1993) underwhich the Commissioners of the Land Office are to conveyeasements on School Land Trust property after only one appraisalbased upon value received "for any public or private easements oflike type at, adjacent to, or near the location of the easement"do not comply with provisions of Section 10 of Oklahoma'sEnabling Act, Ch. 234, Stat. 267, 274 (1906), which require thatinterest in School Lands be sold after appraisal by "threedisinterested appraisers." Nor does that statute's definition of"fair market value" permit the Commissioners of the Land Officeto receive compensation for any damage that the granting of theeasement may cause to the remaining trust property. Theselimitations, we conclude, impermissibly interfere with theState's duty to administer the School Land Trust in a manner mostbeneficial to the trust's estate, as required by OklahomaEnabling Act, Ch. 234, 34 U.S. Stat. 267 (1906).[1]
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL
[1] The provisions of 64 O.S. 1.4(d)/64 O.S. 1.4(e) (1993), which require that requested easements be granted within sixty (60) days and that easements shall run concurrently with the life of the facilities installed, may in some fact situations also run afoul of the State's duty as trustee. We do not address these concerns as they would involve questions of fact.